# EXHIBIT A

FILED
TONI L. HELLON
CLERK, SUPERIOR COURT
12/13/2018 11:39:56 AM
BY: ALAN WALKER
DEPUTY

Robert D. Ryan, Esq. (014639)
***LAW OFFICES OF ROBERT D. RYAN, P.L.C.***
343 W. Roosevelt Street, Suite 220
Phoenix, AZ 85003
Phone:  (602) 256-2333
Fax:  (602) 256-2334
*e-mail: rob@robertdryan.com*

*Attorney for Plaintiff*

Case No. C20186038
HON. RICHARD E GORDON

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF PIMA

| | |
|---|---|
| THE MONACO CONDOMINIUMS PHASE II HOA, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, a foreign corporation; and BLACK and WHITE BUSINESS ENTITIES I-X, | **(Breach of Contract; Insurance Bad Faith; Punitive Damages)** |
| Defendants. | |

Plaintiff THE MONACO CONDOMINIUMS PHASE II HOA, for its Complaint against

Defendants, hereby alleges as follows:

### JURISDICTIONAL ALLEGATIONS

1.     Plaintiff,  The Monaco Condominiums Phase II HOA (hereinafter "Monaco") is an

Arizona condominium association that oversees operation of a condominium complex located at 1620

N. Wilmot Rd. in Tucson, Arizona.

2.     Defendant Philadelphia Indemnity Insurance Company is a foreign corporation

authorized to do and doing substantial business in the State of Arizona, and authorized to do and doing

1

substantial business in Pima County.

3.     Defendants Black and White Business Entities I-X are fictitious entities affiliated with the named Defendant that Plaintiff believes may have some responsibility and/or liability with respect to the allegations made in this Complaint.  The names of such Defendants are currently unknown to Plaintiff and, once those true names are ascertained, Plaintiff will amend this pleading to specifically name such entities as a named party to this litigation.

4.     Defendant's conduct that is at issue in this Complaint occurred in large part in Pima County Arizona, was directed to and concerned an insurance claim occurring in Pima County Arizona, and related to property owned and operated in Pima County Arizona.

5.     Plaintiff's claims for relief meet the minimum jurisdictional requirements of this Court, and in light of the allegations herein, jurisdiction and venue are proper in Arizona Superior Court, in an for the County of Pima.

6.     Plaintiff demands a trial by jury as to all issues raised in this Complaint.

## GENERAL ALLEGATIONS

7.     Plaintiff incorporates by this reference all allegations made in the preceding paragraphs of this Complaint.

8.     The Monaco Condominiums Complex (Phase II) on North Wilmot Road in Tucson consists of  80 individually owned condominium units.

9.     On or about June 13,  2017, a fire occurred at the Monaco complex causing significant damage to six of the units located therein.

10.     At the time of the fire's occurrence, Defendant Philadelphia Indemnity Insurance Company (hereinafter "Philadelphia") provided Monaco with insurance coverage for the complex pursuant to Policy No. PHPK1575910 (hereinafter the "Insurance Policy").

11.     Plaintiff reported a claim to Philadelphia contemporaneous to the fire's occurrence. Philadelphia identified the fire loss as claim no. 1084785 (hereinafter the "Monaco Fire Loss").

12.     Monaco initially retained the services of Titan Restoration in Tucson to perform emergency services at the loss site, and later to effectuate certain repairs associated with the fire damage.

13.     Philadelphia assigned an in-house adjuster to oversee processing of the Monaco Fire Loss, and also an independent insurance adjusting firm to assist on a local basis in Tucson.

14.     Philadelphia ultimately accepted coverage of the Monaco Fire Loss without reservation or exception.

15.     Over the first several months the Monaco Fire Loss was adjusted, Philadelphia did not conduct a comprehensive evaluation of the loss damages.  Philadelphia's adjusting effort was consumed by attempts to negotiate with Titan Restoration directly and effectively minimize its invoicing costs, estimating, and charges for the work it was performing at the loss site.

16.     During the first several months of adjusting the Monaco Fire Loss, neither Philadelphia nor its retained consultants had reached agreement with Monaco as to the totality of the claim damages.

17.     It was not until late-November 2017, for example, that Philadelphia first presented documents purportedly evaluating the totality of the damages making up the Monaco Fire Loss.  This was in the form of an estimate critique as to Titan Restoration's work already performed and an "Xactimate" estimate on the remaining repair work needed at the site in the approximate amount of $240,000.  The estimating and critique was prepared by Madsen, Kneppers & Associates, Inc. (hereinafter "MKA"), Philadelphia's retained construction consultant on the loss.

18.     Upon review of MKA and Philadelphia's initial evaluation of the loss, it was

3

immediately clear to Monaco's governing members that the assessment was nowhere close to the costs necessary to rebuild and repair the units damaged by the June 2017 fire.

19.     Monaco also concluded that it would no longer fight with Philadelphia on the payment of individual invoice billings from Titan Restoration or continue with repairs without a comprehensive funding commitment from its insurance company.

20.     The loss was now more than five months from occurrence, there no comprehensive funding commitment from Philadelphia, and the carrier had spent the bulk of its effort chiseling down the costs and expenses that Monaco was incurring through the retention of Titan Restoration.

21.     Philadelphia's first substantive payout on the building damage and reconstruction did not occur until more than five months after the date of loss.

22.     At or about this same time period, Monaco became concerned and dissatisfied with Titan Restoration for a host of reasons, and fired it from the project in mid-November 2017.

23.     Monaco made it known to Philadelphia that it had fired Titan Restoration.

24.     Unable to secure a comprehensive financial commitment from Philadelphia, Monaco hired a public adjusting firm in January 2018 to represent its interests in seeking fair remuneration from its insurance carrier.

25.     On or about April 20, 2018, the public adjusters, John K. McDougall, Inc.,  presented Philadelphia with a comprehensive proof on the Monaco Fire Loss, which contained a reconstruction estimate in the total amount of $933,525.25.   That proof was some $700,000 greater than Philadelphia's initial assessments of the claim damages.

26.     Over the course of the following months, Philadelphia made a supplemental loss payout to Monaco in excess of $255,000, ultimately valuing the loss at an amount just in excess of $633,000. The approximate $255,000 supplemental payout was not made until July 27, 2018, more than a year

4

after the fire occurred.

27.     As part of its adjusting effort, Philadelphia also retained the services of Gervasio & Associates, Inc., an engineering and architect consultant.  Philadelphia had taken a position on the loss that certain tasks associated with the rebuilding effort did not have to be performed in accord with modern requirements of the uniform building code.

28.     Philadelphia demanded that Monaco's retained architect of record present plans, drawings and other submittals  to the City of Tucson for the purpose of obtaining a building permit based upon code requirements in place at the time the condominiums were originally built in the 1970s.

29.     Monaco refused that request.  Monaco's architect of record, Rob Bass, believed that such a course of action would amount to submitting a deficient and objectionable building plan to the City for approval.  Monaco also believed and advised Philadelphia that it had no intention of rebuilding the damaged condominium units based upon out-of-date  plan drawings and building code standards more than 40 years old.

30.     Despite Monaco's objection to that course of action, Philadelphia instructed its consultant Gervasio & Associates to submit for approval a building plan of its own to the City of Tucson without first obtaining Monaco's permission or authority.

31.     On October 11, 2018, Philadelphia caused its consultant Gervasio & Associates to actually submit that building plan to City officials for approval and issuance of a building permit.  That submission was filed with the City without Monaco's prior knowledge or approval.

32.     Philadelphia also knew that Monaco and its architect of record had specifically objected to the type of submittal that it contemplated making with the City and ultimately effectuated on October 11, 2018.

33.    The October 11, 2018 filing was a fraudulent submittal.  It contained documents, plan drawings, engineering calculations, and construction documents from entities that had not been retained and/or authorized by Monaco.

34.    As Philadelphia's conduit on the Monaco Fire Loss, Gervasio & Associates' representations that it was the architect of record and had authority from Monaco to encumber its property with a building plan submission were false and misleading.

35.    Philadelphia's failure to advise Monaco that it was seeking a approval of a building plan and permit on its own was a fraud on its adjusting effort and reprehensible misconduct.

36.    Upon learning that Philadelphia was illegally attempting to obtain permitting approval on its behalf, Monaco submitted a letter to the City of Tucson advising of the happenstance and instructing it to take no further action on the Gervasio & Associates submittal.

37.    Monaco had become fed up with Philadelphia's wrangling in the adjusting process and understood that it was no longer possible to come to an amicable agreement relative to securing fair payment for their fire loss.

38.    On October 18, 2018, Monaco demanded to appraise its loss in accord with the following language appearing in the Insurance Policy:

**2. Appraisal**

If we and you disagree on the value of the property or the amount of **"loss"**, either may make written demand for an appraisal of the **"loss."** In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of **"loss"**. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

    **a.** Pay its chosen appraiser; and
    **b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

6

39.     The foregoing alternative dispute resolution mechanism appears in the Insurance Policy to allow either the insured or insurance company to settle a dispute in value on any given loss thorough and independent process.

40.     Monaco and Philadelphia clearly exhibited a dispute over the value of the Monaco Fire Loss.  That dispute was framed by Monaco's proof of loss in excess of $930,000 submitted to Philadelphia in April 2018, and the carrier's responsive documents and cost evaluations, exemplified by MKA's July 2018 damage summary in the approximate amount of $630,000.

41.     Philadelphia, on separate occasions, rejected Monaco's demand for appraisal.

42.     Philadelphia's refusal to appraise the Monaco Fire Loss was and remains a breach of the Insurance Policy.

43.     Philadelphia's refusal to appraise the Monaco Fire Loss and its attendant conduct was also a breach of the covenant of good faith and fair dealing implied into the Insurance Policy.

44.     Over the course of the past approximate 15 months that Philadelphia has actively adjusted the Monaco Fire Loss, it has engaged in conduct both in breach of contract and tantamount to insurance bad faith.  Such misconduct includes, but is not limited to, the following:

   a.     Delaying for months any reasonable assessment of Plaintiff's presented losses;

   b.     Undercutting or low-balling its assessment of Plaintiff's presented building losses;

   c.     Failing to timely or reasonably assess damages associated with all facets of Plaintiff's insurance claims;

   d.     Making overt misrepresentations, either directly or through its retained consultants, to City of Tucson officials relative to the repair of the damages condominium structures;

   e.     Taking both direct and indirect action in seeking a building permit relevant to the subject condominium units in contravention of Monaco's express objections and

without Monaco's knowledge or approval;

f.      Submitting for a building permit on Monaco's behalf in what was a fraud on the adjusting process and based upon false or misleading information;

g.      Refusing appraisal of the loss damages in direct contravention of the terms and conditions of the Insurance Policy;

h.      Failing to give Plaintiff's rights and interests equal consideration under the Insurance Policy;

i.      Making adjustment decisions on the reported losses in direct contravention of coverages available to Plaintiff under the Insurance Policy; and

j.      Forcing Plaintiff to overcome needless delays and adversary hurdles in order to obtain reasonable payment of its insurance losses.

45.     The foregoing partial list of misconduct was part of an overall pattern of bad faith used by Philadelphia to deprive Plaintiff of rights and benefits it was entitled to receive under the Insurance Policy.

<u>**COUNT ONE**</u>
**(Breach of Contract)**

46.     Plaintiff incorporates by this reference all allegations made in the previous paragraphs of this Complaint.

47.     Philadelphia materially breached both the express and implied terms of Plaintiff's Insurance Policy through the conduct described in this Complaint.

48.     Plaintiff complied with all terms of its Insurance Policy, and thus, Philadelphia's material breaches of contract were in no manner excused or justified.

49.     Philadelphia currently owes Plaintiff in excess of $300,000 in benefits available under

8

its Insurance Policy.

50.    The amounts owed, stem from Philadelphia's breaches of contract and refusal to pay the reasonable costs of rebuilding the subject condominium units.

51.    Philadelphia's material breaches of contract have caused Plaintiff significant economic, consequential, and general damages, the full extent of which will be proven at trial.

52.    Plaintiff's breach of contract cause of action relates to a contractual agreement with Philadelphia, and thus, Plaintiff is entitled to recover its reasonable attorneys' fees and costs pursuant to A.R.S. §12-341.01.

**COUNT TWO**
**(Breach of the Covenant of Good Faith and Fair Dealing)**

53.    Plaintiff incorporates by this reference all allegations appearing in the preceding paragraphs of this Complaint.

54.    The Insurance Policy contains an implied covenant of good faith and fair dealing.

55.    As an insurance company, Philadelphia owes special duties to Plaintiff pursuant to the covenant of good faith and fair dealing.  Such duties are fiduciary in nature.

56.    Philadelphia's duty of good faith and fair dealing owed to Plaintiff includes, but is not necessarily limited to the following: the duty to investigate presented insurance claims in a timely manner; the duty to respond to reasonable inquiries from its insured in a timely manner; the duty to conduct reasonable investigations of the reported insurance losses; the duty to extend policy benefits under the applicable insurance contract in a reasonable and timely manner; the duty to adjust the reported insurance losses in a fair and reasonable manner; the duty to engage alternative dispute resolution mechanisms available under its insurance policy in a reasonable and timely manner; the duty to act honestly with its insured in the adjustment of presented losses; and the duty to give equal

9

consideration to its first-party insured's rights and interests.

57.    Philadelphia breached each of the foregoing duties in adjusting Plaintiff's reported insurance losses by callously engaging in a course of unreasonable conduct—as described in this Complaint—knowing that such conduct deprived Plaintiff of rights it was entitled to receive under the Insurance Policy.

58.    The conduct of Philadelphia and its adjusters in the evaluation and processing of Plaintiff's claims was fundamentally lacking in honesty and fairness which business entities, particularly insurance companies, are charged with in dealing with consumers.  Philadelphia was on specific notice that its failure to fairly and honestly evaluate and settle Plaintiff's claims was causing, and would continue to cause, Plaintiff significant financial damage and harm.

59.    As a direct result of Philadelphia's bad faith conduct alleged herein, Plaintiff has sustained significant damages to its business, property, and other consequential and general damages in an amount that will be shown at trial.

60.    Plaintiff's insurance bad faith cause of action (breach of the covenant of good faith and fair dealing) arises out of contractual agreements existing between Philadelphia and Plaintiff.  Plaintiffs is therefore entitled to recover its reasonable attorneys' fees pursuant to A.R.S. §12-341.01.

### COUNT THREE
**(Punitive Damages)**

61.    Plaintiff incorporates by this reference all allegations contained in the above paragraphs of this Complaint.

62.    Philadelphia's conduct as described in this Complaint was reprehensible in nature, reckless, and in callous disregard of rights and interests that Plaintiff had under its Insurance Policy, with Philadelphia engaging in that conduct knowing that it was subjecting Plaintiff to significant

hardship.

63.     In light of the reprehensible nature of Philadelphia's conduct, punitive and exemplary damages should be assessed against Philadelphia to deter such conduct in the future and set an example of Philadelphia as an insurance entity.

WHEREFORE, having presented its allegations through this Complaint, Plaintiff prays for a Judgment and/or other relief entered against Defendant Philadelphia Indemnity Insurance Company as follows:

A.      Awarding Plaintiff all of its  economic damages caused by Philadelphia's breaches of contract;

B.      Awarding compensatory and general damages for Plaintiff's tort-related claims for relief;

C.      Awarding punitive damages against Philadelphia in a matter commensurate with its egregious conduct and in an amount necessary to punish Philadelphia for its actions;

D.      Awarding Plaintiff's interest for Philadelphia's untimely payment of its insurance claim pursuant to A.R.S. §20-462.

E.      Awarding Plaintiff reasonable attorneys' fees and costs pursuant to A.R.S. §12-341.01, and/or other pertinent provisions of Arizona law;

F.      An Order compelling Philadelphia's participation in an appraisal of Plaintiff's loss, as instructed in the Insurance Policy;

G.      Pre- and post-judgment interest with respect to Plaintiff contract-based damages; and

H.      An award or decree of any other legal or equitable remedy that this Court deems just and proper.

/ / /

1

DATED this 13th day of December, 2018.

2

**LAW OFFICES OF ROBERT D. RYAN, P.L.C.**

3

By:   /s/ Robert D. Ryan

343 W. Roosevelt Street, Suite 220

4

Phoenix, AZ 85003

*Attorney for Plaintiff*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FILED
TONI L. HELLON
CLERK, SUPERIOR COURT
12/13/2018 12:36:32 PM
BY: ALAN WALKER
DEPUTY

1 │ Robert D. Ryan, Esq. (014639)
2 │ ***LAW OFFICES OF ROBERT D. RYAN, P.L.C.***
   │ 343 W. Roosevelt Street, Suite 220
3 │ Phoenix, AZ 85003
   │ Phone:  (602) 256-2333
4 │ Fax:  (602) 256-2334
5 │ *e-mail: rob@robertdryan.com*
   │ *Attorney for Plaintiff*

6

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

7

**IN AND FOR THE COUNTY OF PIMA**

8

9 │ THE MONACO CONDOMINIUMS PHASE II  )
   │ HOA,                             )
10 │                                  )         **Case No. C2018-6038**
   │            Plaintiff,            )
11 │    v.                            )
   │                                  )
12 │                                  )         **MOTION TO COMPEL**
   │ PHILADELPHIA INDEMNITY INSURANCE )         **APPRAISAL**
13 │ COMPANY, a foreign corporation; and BLACK )
   │ and WHITE BUSINESS ENTITIES I-X, )
14 │                                  )
15 │            Defendants.           )
   │                                  )
16 │                                  )
   │ _____ )

17

18 │        Plaintiff The Monaco Condominium Phase II, HOA (hereinafter "Monaco"), through

19 │ undersigned counsel and pursuant to A.R.S. § 12-1502, hereby moves this Court to compel appraisal

20 │ of its insurance loss with Defendant Philadelphia Indemnity Insurance Company ("Philadelphia").

21 │ Monaco's  insurance policy with Philadelphia contains an alternative dispute resolution mechanism or

22 │ appraisal clause indicating that upon demand, disputes in value over an insurance loss are to be

23 │ resolved through appraisal.  Six condominiums at the Monaco complex sustained significant damage

24 │ during a fire in June of 2017.  Monaco reported an attendant claim to Philadelphia seeking policy

25 │ benefits to have the units repaired and/or reconstructed.  Monaco submitted a proof of loss on the

26

27 │ claim, valuing its damages in an amount in excess of $930,000.  Framing the dispute in value,

28

1

Philadelphia accepted coverage and valued the same loss damages in an amount just in excess of $610,000.  Monaco demanded appraisal of the loss in October 2018; Philadelphia refused that request contending that such an exercise was somehow premature.

Arizona precedent and strong public policy favor alternative dispute resolution processes like appraisal.  Compelling appraisal in this action is both consistent with that authority and the dictates of Monaco's insurance policy. There is a crisply defined dispute in value over the subject insurance loss. Monaco thus seeks an order from this Court compelling appraisal so that an independent panel can value the totality of the subject insurance claim damages.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   Brief Factual Background:

Phase II of the Monaco Condominiums Complex consists of  80 units located at 1620 N. Wilmot Road in Tucson.  On June 13,  2017, a fire erupted in one of the units within the complex, ultimately causing varying degrees of damage to six of the condominiums.  At the time of the fire, Monaco and its individual unit owners were insured by Defendant Philadelphia Indemnity Insurance Company, pursuant to Policy No. PHPK1575910.  Over the course of the subsequent several months, both Monaco and Philadelphia evaluated the damages necessary to repair and/or reconstruct the six units damaged in the fire.

On April 20, 2018, Monaco's retained public insurance adjuster submitted to Philadelphia the association's proof of loss concerning reconstruction and repair costs relevant to the six damaged units.  The proof of loss contained a damage repair estimate in the total amount of $933,525.30.  (*See* attached "*Exhibit 1*," JK McDougall Inc.'s abridged proof of loss.)[1] Philadelphia had already assessed damages associated with rebuilding the units and presented an estimate concerning the same in late-

2

November of the preceding year.  That assessment was prepared by Philadelphia's construction consultant on the loss, Madsen, Kneppers & Associates, Inc. ("MKA").  MKA's estimate for repairs to the units approximated $241,000, with Philadelphia making a commensurate payment on the claim consistent that assessment.  (*See* attached "*Exhibit 2*," pertinent portions of MKA's November 2017 estimate on the loss.)  Following the public adjusters loss submission in April 2018, MKA again responded with an evaluation of the loss damages, now contending that those totaled $611,087.37.  Philadelphia made a supplemental payment to Monaco in July 2018, based on that MKA damage assessment. (*See* attached "*Exhibit 3*," pertinent portions of MKA's cost estimate analysis.)  The MKA cost estimate analysis--adopted by Philadelphia--specifically illustrates the "Delta" or disagreement over claim damages as between Philadelphia and Monaco.  What results is $322,437.93 of repair cost claim damages in dispute on the fire loss, and what Monaco seeks to recover under the terms of its policy.  (*See Exhibit 3* at pg. 1.)

Recognizing this dispute in value, Monaco demanded appraisal of its fire loss on October 18, 2018.  (*See* attached "*Exhibit 4*," written appraisal demand.)  That demand was consistent with the following language appearing in Monaco's insurance policy with Philadelphia:

**2. Appraisal**

If we and you disagree on the value of the property or the amount of **"loss"**, either may make written demand for an appraisal of the **"loss"**. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of **"loss"**. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

  **a.** Pay its chosen appraiser; and
  **b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

---

1 Only pertinent provisions of the attached Exhibits are provided.  The referenced documents are hundreds of pages in length.

3

(*See* attached "*Exhibit 5*," Insurance Policy at pg. 8 of 12.)

On October 29, 2018, Philadelphia's legal counsel refused to engage in the appraisal process, curiously contending that such a process was premature:

> With respect to your demand, we believe that an appraisal at this time would be ***premature because, to the extent that we understand the nature of our clients' respective positions, their dispute is not about the value of the claim so much as it is about the scope of the statutorily-necessitated repairs***.

(*See* attached "*Exhibit 6*," 10/29/18 Letter from counsel Lon Johnson, *emphasis added*.) The letter contends that "scope of repairs" could not be appraised or determined before the City of Tucson chimed in on whether it would require adherence to certain aspects of the uniform building code.

Philadelphia's position in refusing appraisal is a fallacy.  Arizona law is clear that disputes over "scopes of work" are in fact appropriate considerations of the insurance appraisal process. See, e.g., Ori v. American Family Mut. Ins. Co., 2005 WL 3079044 (D. Ariz.) (In compelling appraisal in an Arizona fire loss, Court concludes that scope of work issues are inimical to valuation of the claim.); Harvey v. Travelers, 2012 WL 5488898 (D. Ariz.) (Issues of causation and scope are appropriate content for an insurance appraisal.)  Moreover, there is nothing in the appraisal clause itself indicating that the parties must wait on the issuance of building permits or the like before they can settle valuation differences on any given claim.  Such would effectively eviscerate any right of appraisal and force an insured to apply for a building permit as a routine part of the claim adjusting process.  It would also potentially render government officials as final arbiters on any variety of insurance losses.  The fallacy of the position is also illustrated by Philadelphia's own conduct on this loss.  Its own construction consultant, MKA not only submitted a bid and estimate of the repair damages, but also a

comprehensive evaluation of Monaco's proof of loss and demand for repair costs in excess of $930,000. Both MKA and Philadelphia thus had no problem valuing Monaco's fire damages and assessing an appropriate scope of work.  Those valuations were more than $300,000 less that Monaco's own detailed damages estimating.

Monaco filed this litigation to both enforce appraisal of its loss and seek additional damages and relief for Philadelphia's insurance bad faith.  Such charges are anchored by Philadelphia's remarkable delays in processing this loss, its unreasonable evaluation of the claim damages, and a brazen attempt to have its experts obtain a building permit at the condominium site in an unlawful manner and without Monaco's knowledge or permission.  While those claims are and will remain pending, they are not directly pertinent to this motion to compel appraisal.

**II.      Legal Authority:**

**Arizona Law Compels the Appraisal of Monaco's Fire Loss**

A.R.S. § 12-1502(A) provides this Court with the authority to compel appraisal through the following pertinent language:

> On application of a party showing an agreement described in section 12-1501, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration. . . .

Although A.R.S. § 12-1502 falls under a statutory scheme governing arbitrations, Arizona courts have determined that appraisals are generally treated the same as arbitrations and look to arbitration law in defining issues relevant to an appraisal process described by an insurance policy.  Meineke v. Twin City Fire Ins. Co., 181 Ariz. 576, 580, 892 P.2d 1365, 1369 (App. 1994); see also, Palozie v. Sentinel Mutual Auto Ins. Co., 1996 WL 814533 (D. Ariz. 1996).   A court  is also "very limited" in its power to refuse a motion to compel appraisal under the insurance clause of an insurance policy.  When considering  such a motion, any doubts concerning the scope of appraisable issues are to be resolved in

favor of appraisal.  Ori v. American Family Mut. Ins. Co., 2005 WL 3079044 (D. Ariz.) (applying Arizona law in compelling the appraisal of an insurance loss.); Harvey v. Travelers, 2012 WL 5488898 (D. Ariz.) (Issues of causation and scope are appropriate content for an insurance appraisal.).

The Ori decision also stands for the proposition that disputes over the scope of work or scope of damages are encapsulated in the obligation to appraise.  In Ori, the insured demanded appraisal on an Arizona fire loss where American Family disputed whether certain repairs were needed to indemnify its insured.  It claimed, for example, that a smoke damaged roof did not need to be replaced--as its insured advocated--but instead could be adequately cleaned.  American Family refused appraisal contending  that such issues were disputes in the scope of repairs and not disputes over value.   The District Court rejected that contention, reasoning that arguments over scope of work were embodied in a dispute over value and thus appropriate for appraisal:

> The appraisal clause provides that in the event Ori and American Family "fail to agree on the amount of loss, either may demand an appraisal of the loss." American Family contends that the controversy in this case is "***the scope of the repairs to be done***, the amount of repairs covered, [and] the actual work that is required to be done under the policy." These issues, according to American Family, do not involve the "amount of loss." ***This argument runs counter to established law and the facts contained in the record***.
>
> \* \* \*
>
> For example, the parties agree that the fire caused a smoke smell to build up in a ceiling cavity. Ori believes that the ceiling will have to be removed to facilitate the cleaning of damaged materials; American Family counters that alternative methods of cleaning will be sufficient and the ceiling need not be removed. ***The Court concludes that this type of disagreement is a disagreement about the "amount of loss" and is subject to arbitration.***  Ori v. American Family, 2005 WL 3079044 at pp. 3-4 (emphasis added).

In the present case, Philadelphia's refusal to appraise because of disputes in scopes of work should be similarly rejected.  Such is part of the appraisal process, where Philadelphia is free to argue

6

with the appraisal panel that certain tasks are unnecessary or not required under the pertinent building code. These are the types of arguments that appraisal panels resolve as a matter of routine. They are part and parcel of any valuation process, as recognized by the <u>Ori</u> and <u>Harvey</u> decisions cited above. Moreover, in Monaco's claim here, there could not be a more clearly defined dispute in value. Monaco submitted a proof of loss in April of this past year for $933,525.30. Philadelphia evaluated the claim months earlier and presented an estimate of all associated damages at the loss site in the approximate amount of $240,000. Further, in specific response to Monaco's proof of loss, Philadelphia specifically valued the claim again, tabulating damages of $611,087.37 in July 2018. The appraisal clause of Monaco's policy and the cited precedent affirm Monaco's right to have an appraisal panel assess its claim valuation and demand for more than $300,000 of additional damages.

**III.    Conclusion:**

Based upon the foregoing, Monaco is entitled to an Order from this Court compelling the appraisal of its fire loss. This especially true where, as here, the parties have already consulted with a host of experts concerning the valuation of the needed repairs. Appraisal is thus the most cost-efficient and reasonable vehicle to set the value of the claim damages. It is also required here, in accord with strong public policy concerns supporting this type of alternative dispute resolution mechanism.

Plaintiff respectfully requests oral argument in the consideration of the current motion.

Filed this 13th day of December 2018.

***LAW OFFICES OF ROBERT D. RYAN, P.L.C.***

By:     /s/ Robert D. Ryan
343 W. Roosevelt Street, Suite 220
Phoenix, AZ 85003
*Attorney for Plaintiff*

7

 **CT Corporation**

**Service of Process Transmittal**
12/24/2018
CT Log Number 534627394

TO:     Scott Yurko
        Tokio Marine Specialty Insurance Company
        One Bala Plaza, Suite 402
        Bala Cynwyd, PA 19004-

RE:     **Process Served in Arizona**

FOR:    **Philadelphia Indemnity Insurance Company**  (Domestic State: PA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | The Monaco Condominiums Phase II, HOA, Pltf. vs. Philadelphia Indemnity Insurance Company, etc. and Black and White Business Entities I-X, Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Certificate, Complaint, Cover Sheet, Attachment(s), Motion, Exhibit(s) |
| **COURT/AGENCY:** | Pima County - Superior Court, AZ<br>Case # C20186038 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Phoenix, AZ |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 12/24/2018 postmarked on 12/20/2018 |
| **JURISDICTION SERVED :** | Arizona |
| **APPEARANCE OR ANSWER DUE:** | Within 20 calendar days from the date of service, not counting the day of service |
| **ATTORNEY(S) / SENDER(S):** | Robert D Ryan<br>Law Offices of Robert D. Ryan, P.L.C.<br>343 W. Roosevelt St. #220<br>Phoenix, AZ 85283<br>602-256-2333 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 12/24/2018, Expected Purge Date: 12/29/2018<br><br>Image SOP<br><br>Email Notification,  Nora Howard  nhoward@phlyins.com<br><br>Email Notification,  Scott Yurko  scott.yurko@tmnas.com<br><br>Email Notification,  Morgan Knapp  morgan.knapp@tmnas.com |
| **SIGNED:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>3800 N Central Ave Ste 460<br>Phoenix, AZ 85012-1995<br>602-248-1145 |

1/18 - Notice of removal due
1/28 - Response due (served upon the DOI on 12/19 - see page 3 - 40 days allotted)

 

DOCKETED
On 01/07/19, 2:33 pm
By MAG4328

On 01/07/19, 3:03 pm
By TRin

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



**ARIZONA DEPARTMENT OF INSURANCE**
100 North 15th Avenue, Suite 102
Phoenix, Arizona  85007-2624



CERTIFIED MAIL

7018 0680 0002 0425 6669

U.S. POSTAGE ≫ PITNEY BOWES



ZIP 85007 $ 013.45⁰
02 4W
0000342984 DEC. 20. 2018.

PHILADELPHIA INDEMNITY INS CO
CT CORP SYSTEM
3800 NORTH CENTRAL AVENUE, SUITE 460
PHOENIX, AZ 85012
C20186038

# EXHIBIT B

1   Donald L. Myles, Jr., Bar #007464
    Josh M. Snell, Bar #021602
2   JONES, SKELTON & HOCHULI, P.L.C.
    40 North Central Avenue, Suite 2700
3   Phoenix, Arizona  85004
    Telephone:  (602) 263-1743
4   Fax:  (602) 200-7842
    dmyles@jshfirm.com
5   jsnell@jshfirm.com
    minuteentries@jshfirm.com
6
    Attorneys for Defendant Philadelphia
7   Indemnity Insurance Company

8

        **SUPERIOR COURT OF THE STATE OF ARIZONA**

9

                  **COUNTY OF PIMA**

10

11   THE MONACO CONDOMINIUMS PHASE     NO. C20186038
    II HOA,

12                             **DEFENDANT'S NOTICE OF FILING**
                      Plaintiff,   **NOTICE OF REMOVAL**

13         v.                 (Assigned to the Honorable Richard E.
                                Gordon)

14   PHILADELPHIA INDEMNITY
    INSURANCE COMPANY, a foreign
15   corporation; and BLACK and WHITE
    BUSINESS ENTITIES I-X,
16

17                      Defendants.

18

19          Defendant Philadelphia Indemnity Insurance Company ("Defendant"), by and

20   through counsel undersigned and pursuant to 28 U.S.C § 1441, et. seq., hereby notifies this

21   Court that it filed a Notice of Removal of this Action to the United States District Court for the

22   District of Arizona.  A copy of the Notice of Removal (exclusive of exhibits) is attached as

    Exhibit 1.
23
    ///
24
    ///
25
    ///

1

2

DATED this 17th day of January 2019.

JONES, SKELTON & HOCHULI, P.L.C.

3

4

By _____

5

Donald L. Myles, Jr.

Josh M. Snell

6

40 North Central Avenue, Suite 2700

Phoenix, Arizona  85004

7

Attorneys for Defendant Philadelphia Indemnity

Insurance Company

8

9

ORIGINAL of the foregoing electronically filed

10

this 17th day of January 2019.

11

COPY of the foregoing mailed/e-mailed

12

this 17th day of January 2019, to:

13

Robert D. Ryan

LAW OFFICES OF ROBERT D. RYAN, PLC

14

343 W. Roosevelt Street, Suite 220

Phoenix, Arizona 85003

15

rob@robertdryan.com

T: (602) 256-2333

16

Attorney for Plaintiff

17

*/s/Rachel Barajas* _____

18

19

20

21

22

23

24

25

26